UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:04CV-506-R

ROBERT DANGERFIELD                                                          PLAINTIFF

v.

METROPOLITAN LIFE INSURANCE COMPANY                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on cross-motions of Plaintiff Robert Dangerfield (Dkt. # 27) and Defendant Metropolitan Life Insurance Company ("MetLife") (Dkt. # 26) for summary judgment denying and affirming, respectively, the claims administrator's decision. Responses (Dkt. Nos. 29 and 30), a reply (Dkt. # 34) and sur-reply (Dkt. # 39) were filed, and this matter is now ripe for adjudication. For the reasons that follow, the Court **GRANTS** the defendant's motion.

## BACKGROUND

Plaintiff Robert Dangerfield filed this action for judgment against MetLife, his employer and the provider and administrator of a Group Long-Term Disability Plan ("Plan") which covered Plaintiff during his employment by MetLife. The Plan is governed by the Employee Retirement Income Security Act of 1974 (29 USC §§ 1001 *et. seq.*) ("ERISA"). Plaintiff was employed by MetLife as a sales representative beginning in 1986. In March of 1994, Mr. Dangerfield applied for long-term disability benefits ("LTD benefits") on the basis of back pain, apparently caused by degenerative disc disease, thoracic outlet syndrome and peripheral

1

neuropathy. He received those benefits under the Plan for six months under the "own occupation" provision and for nearly eight years thereafter under the "any occupation" provision. In March of 2003, MetLife terminated the LTD benefits. Mr. Dangerfield appealed MetLife's termination, and his appeal was ultimately denied. When the denial was upheld and Plaintiff had exhausted his administrative remedies, he brought this claim under §502(a)(1)(B) of ERISA, asking the Court to overturn the claim administrator's determination.

## STANDARD

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit held that § 502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions. 150 F.3d 609, 617 (6th Cir. 1998). Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the parties agree that the Plan grants its administrators such discretion.

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1071 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it. *Id.* In evaluating those decisions, this Court must consider only the evidence before the administrator at the time, *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988), and must account for potential conflicts of interest. *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp.2d

724, 727 (W.D. Ky. 2001) (citing *Firestone Tire and Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998)).

## ANALYSIS

MetLife's final decision to uphold the termination of LTD benefits was based on its review of Plaintiff's claims file after his decision to appeal the initial denial of LTD benefits. The review leading to the initial termination included examination of Plaintiff's claims file, including the following: (1) a Functional Capacity Evaluation, completed by Mr. Dangerfield's treating physician, Dr. John Godfrey on December 23, 2002; (2) a series of "surveillance videotapes" apparently made on December 8-9 of 2002 without Mr. Dangerfield's knowledge; (3) the October 10, 2002 Activities of Daily Living Form, completed by Mr. Dangerfield; (4) a report reflecting analysis of the file by an Independent Physician Consultant, Dr. Robert C. Porter, who examined Plaintiff's complete file, including the above materials. On the basis of these, along with the other items listed in its Response to Plaintiff's Motion (Dkt. # 28, at p. 4), MetLife terminated Mr. Dangerfield's LTD benefits. Through counsel, Mr. Dangerfield then notified MetLife of his intent to appeal the termination. After reviewing the items listed on pages 5-6 of the above-mentioned response brief, MetLife sent Mr. Dangerfield a letter on November 25, 2003, upholding its original decision to terminate his LTD benefits. On May 30, 2004, Mr. Dangerfield submitted additional medical information (apparently in the form of a letter from Dr. Godfrey) that he had told MetLife in September 2003 he was planning to submit before it decided his appeal. Since this information arrived approximately six months after MetLife had decided the appeal, it was not part of the basis for MetLife's final decision.

Plaintiff's claim that Defendant's decision was arbitrary or capricious rests on the

3

cumulative effect of several different objections. (1) Mr. Dangerfield argues that one factor which the Court must consider in determining whether the decision was arbitrary or capricious is MetLife's status as both plan provider and plan administrator; that is, the fact that its status as such presents a conflict of interest. (2) Mr. Dangerfield also argues that MetLife's decision was unreasonable in that it based the decision on a *lack* of "recent objective medical evidence to support Plaintiff's claims of continued disability." (MetLife's Sur-Reply, Dkt. # 39, at p. 4). (3) Mr. Dangerfield argues that MetLife unreasonably relied upon the "evidence" from the video surveillance unreasonable weight because he challenges several aspects of MetLife's interpretation of the video. (4) Relatedly, Mr. Dangerfield argues that the decision indicates that MetLife gave unreasonable weight to inferences from the video surveillance because the other evidence which MetLife says it considered was unchanged from the previous eight years, during which time MetLife had continuously paid him LTD benefits.

     As to MetLife's status as plan provider and plan administrator, the situation is in relevant part identical to the one presented in *Killian v. Healthsource Provident Administrators, Inc.* in which the defendant was a plan administrator providing insurance to its own employees. 152 F.3d 514 (6th Cir. 1998). In that case, the court held that this setup created "an actual, readily apparent" conflict of interest. *Id.* at 521. Further, it said, when reviewing the decision of an administrator in such a position "[t]he question is simply whether [its] actions vis-a-vis [the plaintiff] were improperly influenced by its conflict." *Id.* If so, the conflict "must be weighed as a factor in determining whether there is an abuse of discretion." *Id.*, quoting *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotation marks and citation omitted) and citing *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th

Cir. 1998). See also *Jackson v. Metropolitan Life*, 24 Fed. Appx. 290 (6th Cir. 2001). The Court will therefore weigh its conflict of interest accordingly.

Also like the plaintiff in *Killian*, Mr. Dangerfield argues that MetLife's decision was arbitrary and capricious on the basis of *what* information it decided to include. In *Killian*, the court found that the defendant improperly declined to consider information weighing in favor of benefits while supplementing the record with information supporting its decision to deny coverage. However, the supplemental information provided by Mr. Dangerfield was not provided until *well* after he notified MetLife of his decision to appeal; in fact, the appeal (which took approximately eight months) had been decided for six months by the time Mr. Dangerfield submitted his materials. MetLife's failure to consider this material was therefore not erroneous, and its decision not to re-open the appeal six months later does not render its decision arbitrary and capricious or give rise to the inference drawn by the *Killian* court that the defendant was improperly influenced by its conflict of interest.

Mr. Dangerfield also challenges MetLife's decision to consider the surveillance tapes it made at Mr. Dangerfield's home on December 8-9. Mr. Dangerfield claims that the images on the surveillance tapes are not sufficiently clear to establish that he is the person being filmed. Further, he argues that the inferences drawn by MetLife from the videotape are not supported by the tape. As to the first issue, Mr. Dangerfield has provided no reason for the Court to believe he is *not* the person depicted in the videotape, or that it was not made at his home (the address of which MetLife certainly would have known). His bald allegation that the tapes do not depict him does not lead to the conclusion that MetLife's consideration of them was arbitrary or capricious. As to the question of whether MetLife drew appropriate inferences from the tapes

5

(i.e., that Mr. Dangerfield's physical limitations were not what he reported them to be), Mr. Dangerfield argues that the tapes do not reflect the level of ability that MetLife contends they do, and that MetLife's reliance upon the tapes to support its decision to deny benefits was arbitrary and capricious.

Defendant's decision to deny Plaintiff's disability benefits must be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). The medical documents in this case contain "substantial evidence" that could support either outcome - a finding that Mr. Dangerfield is disabled under the terms of the Plan or that he is not. There is no suggestion that MetLife is bound by its initial decision to provide benefits, assuming it follows proper procedures for initiating a review of benefits and deciding its outcome. Therefore, even assuming *arguendo* that the surveillance tapes do not provide evidence of significant weight, MetLife's decision to terminate Mr. Dangerfield's benefits must be upheld.

## CONCLUSION

For the reasons outlined above, the Plaintiff's request for relief under ERISA §502(a) is **DENIED** and the Defendant's Motion for Judgment Affirming Claims Administrator's Judgment and Motion to Dismiss and for Summary Judgment is hereby **GRANTED**.